You start with an initial, you take your chances up here. It's unclear to many, Your Honor. We're ready when you are. Thank you, Chief Judge, and may it please the Court. Keith Emanuel with Evershed Sutherland for Petitioners. This case gives the Court an opportunity to correct the erroneous ruling of an immigration court with some of the worst statistics in the nation. The Board of Immigration Appeals affirmed most of those rulings, and we ask this Court to reverse. First, the BIA ignored copious evidence documenting El Salvador's inability to control the MARA-18, addressing only its willingness to do so. Second, it unreasonably required a woman testifying about fear of her life to have her family members risk their lives to obtain death certificates to corroborate her asylum claim. Third, it erroneously held that single mothers in El Salvador were too overbroad to be a particular social group because counsel's brief did not include the magic words, with minor children. Lastly, even under substantial evidence review, the BIA erroneously failed to recognize that Ms. Sanchez's family, her status as a single mother in El Salvador, and her expression of a political opinion were at least three central reasons that the MARA-18 threatened her and her daughter with their lives. They basically wanted money, did they not? They didn't want her to campaign, to hand out leaflets, to act as an informer. They wanted money. It is true that they asked her for money and extortion. No, they wanted money, did they not? It's not clearly erroneous for the immigration judge to determine that they wanted money. That was their driving force, their motivation. It was a criminal enterprise, was it? It is true that they chose to extort her and asked her for money, but that does not mean that there were not other reasons that they chose out her. They found that the reason they did it was because they wanted money, did he not? The IJ, I'm sorry. The IJ, Your Honor? Yeah. Yes. Okay, that's not clearly erroneous on this record, is it? But the IJ and the BIA must consider whether the other protected reasons were also at least… Consider or not consider, that's not clearly erroneous on this record, that finding that they did it for money. It doesn't end the analysis because there can be… I'm pretty sure the IJ and the BIA found both that the reason was extortion and that family ties and or single mother were not central reasons. There was a finding of fact with respect to all three of those points. Is that not true? It is true that the BIA held that family was not one of the reasons. However, it did not address the nexus question with regard to single mothers, finding that that was not a particular social group. Why would you care if your primary central motivation is money, whether it's a single mother, a single father, a married couple, or somebody whose domestic status is unknown? Because what they're after is somebody who is vulnerable, somebody who will give in to them. Then the social category would be vulnerable, right? And so they're looking for what types of groups meet the vulnerable requirements so that we're going to be able to exert our control. But you're arguing for a social group of vulnerable people. And that is not the category. They identified these social groups because of their vulnerability. So anybody who's vulnerable fits within this social group you would have us recognize? No, Your Honor. Why not if they're looking for vulnerable people? If they see somebody on the street with one leg, handicapped, is that a social group? I would say that handicapped individuals probably do fit the three part test that this Court has established. If they see somebody on the street who's visibly intoxicated, is that person in a social group because they're vulnerable? No, that does not meet the three part test that this Court has set forth. If social visibility, particularity, and a fundamental characteristic, that would be something that would easily change. They're alcoholics. Is that a social group? I don't think so, Your Honor. That's not the kind of thing that this Court has recognized. But we think single mothers Well, we haven't recognized single mothers either, have we? No, you've never had the opportunity to explicitly address So if they're not a social group unless we've recognized them, you lose? No, it's a matter of whether a particular group constitutes the statutory definition of particular social group. That question is why this Court reviews DeNovo from the BIA. And so the way that this Court has set forth the requirements is that there are three requirements. It must be fundamental or immutable characteristic. It must be particular, have clear boundaries, and it must be socially visible. Let me ask you this. I forgot about immutability, but that is a requirement. How is a single mother classification immutable? She can get married, can't she? Well, it's immutable or fundamental. I mean, it's possible that she will. It's immutable or fundamental, Your Honor. It goes to what their identity is. And while some people go on to get married after they are single, it's not something that we would expect them or require them to change in order to avoid persecution. So the characteristic has to be one that we don't require them to change. I believe that that's the way that this Court has described that particular requirement, of the fundamental means it is core to their identity, and it would be unfair to require them to change that just to escape the persecution involved. And the way that those three requirements have been set forth by this test, it sounds much like a demographic subset of society is what those three requirements are getting at. And a single mother — What is the evidence that she was targeted in part because she was a single mother? First is that when they came to her, they said, we will kill your daughter if you do not comply. That covers the mother, but not necessarily the single. Well, and we think that the evidence shows, and Ms. Kennedy testified, that because she did not have protection from a male, that made her more likely that that would be somebody that they would go after and that they would look for, and that she's going to be somebody who complies with their demands. But I do want to point out again that the BIA did not explicitly address whether single mothers was one of the Nexes. And so if you decide — But the IJ did. Yes, but the BIA did not accept that, and so this Court is only reviewing the BIA unless it explicitly adopts the IJ's findings on a particular point. And on that point, the BIA did not. I thought we held it where the IJ made findings, and the BIA didn't contradict those findings where they were consistent. We took them as established. Your Honor, my understanding from this Court in Seck v. U.S. Attorney General, which is 663 F. 1356, a 2011 case, is that we don't consider issues not explicitly reached by the BIA when the BIA issues an opinion. If there's something that says, and we adopt the remainder of the IJ's findings or something like that, that would count as a time when we go back and look at the IJ. But otherwise, we are limited to explicitly what the BIA chose to hold. And we don't go back and look at the IJ's holdings. And so single mothers would be the simplest way for this Court to go because that is a matter of law, and you don't have to have a nexus today to decide that because the BIA didn't decide that in the first instance. But I'm somewhat in sympathy with Chief Judge Carnes. I don't see any evidence that they targeted her because of that. I mean, the threat to the daughter is just like any threat. It could have been a threat to the son just as well, or she could be married. The threat doesn't have anything to do with her being a single mom. And the only other evidence I saw was Dr. Kennedy's testimony that the gang was chauvinist, which is too vague to be any support for targeting because of a single mother. I see the general theory that she might be a little more vulnerable, but this gang targeted both men and women. That's clear in the record, is it not? At times, yes. And those men that it talks about in the record were her family members. And so, of course, we think that that supports the nexus of family being one of the reasons that they sought her out because all of this happened after her sister— I thought there was general testimony that this gang, these two gangs that they were talking about, targeted anybody with money, male or female. It is true that the evidence shows by Ms. Kennedy's testimony that they often go after market vendors to ask for money and that those are 80 percent women. So even if there were no finding below, or even if we do not owe deference to the IJ's finding with respect to single mothers, I don't see that there would be enough evidence to support that. Well, Ms. Kennedy testifies that those without male protection are easier for the gang to go after, that those in the markets are primarily women, that single mothers are targeted particularly, and that school children are especially vulnerable because they are away from their parents and easy for the gangs to manipulate. But you're saying that they targeted her male relatives. That undercuts your argument she was without male protection, single or not, correct? They knew she had male relatives, so they target them. Where does your vulnerability argument go there? The fact that a woman is single means she's totally without protection. Well, because that's what they decided as a reason why they sought her out here. Whether or not it was true or whether or not she was completely without male protection is beside the point as long as that's why they sought her out as somebody that they could extort. And we think that the extortion itself is all part of the persecution, that it's not limited simply to her refusal to pay or them wanting money. If we just say that they wanted money, that explains why extortion is what they chose, but it doesn't explain why they seeked her. So they extort lots of people, and they extort a woman who happens out there at the market by herself but happens to have a husband.  They extort money from a man who's by himself in a small build. Under your theory, it's not persecution. It's only persecution when they happen to extort money from a woman who happens to not be married. Your Honor, Chief Judge, I see that my time has expired. Go ahead and answer that question. No, Your Honor, that is not our position. There certainly, in any given case, there could be a different protected category that applies, and just because this is the one that applied to her— Everybody's in a protected category of one kind or another because everybody's vulnerable to this kind of criminal violence unless they're armed policemen. No, Your Honor, we— Well, tell us somebody who's not vulnerable to this kind of extortion. Well, we don't think that vulnerability is what makes them— that's not what defines the particular social group. What defines it here is things that are completely— You said they were targeted because they were vulnerable. I would like for you to explain to me somebody who is targeted other than armed policemen or members of the Army who is not vulnerable. Somebody who's not vulnerable whether they're targeted or not. Tell me that. I mean, I would say that her brothers, though they were successfully attacked, were not particularly vulnerable. There's no reason to think that they were sought out for their vulnerability. Why were they successfully attacked if they weren't vulnerable? I think the reason that they were attacked is because they were family members, and anybody can be caught off guard, but— So anybody who's a family member of somebody else is a vulnerable group? Anybody who is a family member of somebody who has resisted the gangs is potentially protected under family membership, yes. And if their family member didn't resist the gang, by definition they would have been extorted that way. It just sounds to me like you're saying everybody's vulnerable. And I don't—I have yet to find somebody who's not vulnerable who hasn't been successfully extorted. Well, and, Your Honor, I would say that the difference between attacking somebody, what might make somebody vulnerable to attack, and what might make somebody vulnerable to extortion is very different. Because with extortion, it's we're going to be able to control your activity. We're going to be able to force you to act over time in a certain way compliant with our demands. And so that's a much smaller group of people who may be vulnerable to that versus somebody who's just vulnerable to being attacked off guard. And the people who are particularly vulnerable to extortion are the market vendors, right? I wouldn't say that they're particularly vulnerable. I would say that those are who have money and who the gangs often ask for money and that they are, again, 80 percent of the time women. And that might have something to do with the reason why. Well, is there any indication that they attack— the market vendors they attack are disproportionately women compared to the percentage of people who are market vendors who are women? In other words, 80 percent of the market vendors are women, I believe you say? Yes. Is there any indication that more or fewer than 80 percent, more or less than 80 percent of the market vendors they extort money from are women? I understand your question. I don't think that evidence is in the record. It's kind of like the famous bank robber who asked why he robbed banks. He said because that's where the money is. Isn't that the situation we've got here? That's where the money is? They can extort and require $5, $10, whatever a week because they know the market vendors will be bringing in that money. And what they're ultimately after here is not so much money as exertion of power and control. And so they're looking for what people they are able to control and show that message to the rest of society there. Well, it does no good to control a pauper. You have to control somebody with a source of money or you get no money. And there's no indication they were extorting people who didn't have funds. Well, I mean, Issam Marr testified herself that she did not have enough money to make the payments to them. Right, but she had money to make some payments. So they were extorting money from someone who had money to pay them? Initially, yes. And then it doesn't matter to them, ultimately, whether she says she does still have the money or she no longer has made any more money. And so the money there, it seems to indicate that the money there is not the driving force. Okay. Thank you, Ms. Warren. Thank you, Your Honor. May it please the Court. Virginia Lum for the United States. Your Honors, I think you've hit the nail on the head. This is a case purely about extortion. And as this Court and most courts recognize, extortion is not a statutorily protected ground under the immigration laws. Petitioner's own expert testified that the gangs extort money as their way of life. They go after males, females, anyone they can. I think in this case, Petitioner seems to feel that a particular social group is a catch-all, and she's trying to fit in one of these three categories. She tries three of them. Number one, she tries first she claims that she was targeted because her sister first refused to pay the extortion money, and so they apparently killed her sister's husband. And from then on, there's a tier of about six other people that were either kidnapped or killed or attacked. And she claims that because of that familial relationship, she's a PSG recipient. That's not the case, Your Honor. Number two, she tries the single mother. As you've recognized, how did the gangs know she was a single mother? Is there any evidence that the gang knew she was a single mother? No, Your Honor. That's a big crux of the case here. All of her claims are based on her testimony alone. She has an expert that she also has put forth. The testimony of her expert claims she has no knowledge of the petitioner herself. She bases her whole expert testimony on reading affidavits of the petitioner. Petitioner did testify that she did know one of the gang members at one point and who was a childhood friend. And the whole crux of this has to do with the immigration judge recognizing there was no supporting evidence. She makes these incredible claims of being targeted, being persecuted with these threats for not paying her $20 every three days, which she initially did, and also tries to tie that to her sisters refusing to pay that. But there is nothing in the evidence to support that. And, Your Honor, as the record reflects, the immigration judge bent over backwards, asked her repeatedly, you know, you claim you have all these relatives that have been persecuted or harmed. Where's the evidence? She's in touch with her family. There are four members, plus her mother, still living in El Salvador. She claims the testimony indicates she's still in touch with them. She could have gotten affidavits, something from them. Her own expert testified that, yes, it is possible to get death certificates. Yet her own attorney did not specifically ask, although given the opportunity several times, to establish whether there was a reason she didn't have death certificates for her brother-in-law or all these other people who were supposedly harmed. You know, she has had seven hearings, Your Honor, and she's been given every opportunity, and there just isn't anything there. It's a clear case of extortion. And as this court and all courts recognize, that is not a protected ground. And a particular social group is not a catch-all for everybody to try to get immigration benefits. You know, this is not a happy case. But, Your Honor, we have laws, and, you know, until something is proven, we can't reward everybody. I think you've recognized the record is devoid of anything showing that she was particularly targeted. It's unfortunate, her situation, but she has not met her burden of proof. And unless the standard of review is substantial evidence, unless you see something there that compels a contrary result, you know, you might even see something that maybe leans towards that way, but it has to be compelling, and that is not the case here, Your Honor. No question. Thank you. Thank you. Ms. Manuel, we'll give you your full three. Thank you, Your Honor. I want to first remind the Court that we have also asserted alternative grounds of relief under the Convention Against Torture and Withholding of Removal. And the Convention Against Torture does not require you to find a nexus to a particular social group or to a political opinion. The only holding that the BIA made with regard to that claim was that the government, she had not shown acquiescence of a public official. I thought we had held, dozens of times in published opinions, that if you don't make out a case for asylum, you also lose on the CAT claim. Am I wrong? Respectfully, yes, Your Honor. I believe that what you might be referring to is withholding of removal under the INA has a higher standard, more likely than not, but Convention Against Torture has a different set of elements, not all of which overlap, and it does not require You must establish that she more likely than not will be tortured at the instigation or with the consent or acquiescence of government authorities if removed from her home country. You're right. It's the withholding of removal that takes everything that's required for asylum and adds something, which makes you wonder. But she's going to be tortured? You've made out a case that she's going to be tortured with the acquiescence of the government? Yes, Your Honor. And we would point out there that the standard is acquiescence of a single public official. And so the acquiescence here, the first facts used to establish that are what happened in her case, that she went to the police and she saw them doing nothing. She didn't see them following up, investigating, asking her questions, coming the next day, any type of activity that would show, and we think that there shows that they were acquiescing to this occurring. We see that the definition in the regulation, 8 CFR 208.18A7, acquiescence requires the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent it. And we think that's what was happening here. When she reported this to the police and they, in effect, did nothing. And, again, we don't have to have the entire- Our Rees-Sanchez case is almost identical, not quite. They did a little more investigation there, but we clearly held that the mere fact that they didn't catch the culprit is not enough. And, Your Honor, I think that case is distinguishable, that they took more actions there to actually try to- I agree, a little more, but not much more. And it makes sense that, of course, the success of the investigation is not the defining result, but what efforts they took in response to her claim that this was going to happen to her. And I see that my time has expired. Counsel, just so you'll know, I wasn't making it up. Rodriguez Morales v. U.S. Attorney General, 11th Circuit, 2007. If, quote, a petitioner fails to establish her claim of asylum on the merits, her claims for withholding of removal and cat relief necessarily fail, period, end of quote. Actually, yeah. Actually, I bet you, I haven't read that case, but I bet it was a case where the problem here with cat and asylum is that cat, it doesn't matter whether or not they were- Certainly. Whether they were targeted for a protected reason. Right. So that case, probably the asylum turned on something other than that. It would not be the first time one of our opinions overstated withholding. But thank you, counsel. We'll take that under submission. Thank you, Your Honors. Next case. Yeah, I'm ready. We'll take the next case, Ace American v. Exide. Oh, that's fine. Mr. Garcia, we're ready when you are.